DREW, J.
_jjWe are asked to decide whether the trial court abused its discretion in partitioning the former community between these litigants. The judgment rendered below only slightly amended the detailed and comprehensive recommendations of the hearing officer.[1] Finding no fault in the trial court’s ruling, we affirm in all respects.
CHRONOLOGY
These dates may help put this dispute in perspective for the reader:
• August 18, 2000 — date of marriage;
• January 31, 2008 — effective date of termination of the community;
• March 25, 2008 — date of divorce;
*639 • June 9, 2008 — petition by Judy Robert for community partition;
• August 19, 2009 — date of our previous opinion[2] that rejected Mrs. Robert’s appeal of a custody issue;
• October 26, 2010 — conference with hearing officer;
• October 29, 2010 — hearing officer’s conference report is filed;
• November 5, 2010 — objection filed by Mrs. Robert;
• January 31, 2011 — Mrs. Robert’s attorney withdraws;[3]
• June 16, 2011 — date of district court trial de novo;
• June 29, 2011 — date of filing of district court judgment; and
12* July 11, 2011 — Mrs. Robert’s motion for new trial is denied.
The trial court’s written judgment essentially adopted the hearing officer’s thorough and detailed Findings of Disputed and Undisputed Facts as the judgment of the court, subject to these few modifications:
• Bush hog Value reduced from $300 to $30;[4]
♦ Refrigerator Value reduced from $325 to $100;
♦ 27" television Value reduced from $88 to $10;[5]
♦ Lawnmower Value reduced from $75 to $5;[6] and ♦ Deep freeze Value reduced from $150 to $5.[7]
ISSUES IN DISPUTE
Mrs. Robert, the only witness in district court, complains that she was not placed under oath, a fact disputed by Mr. Robert. We are puzzled as to what harm she may have suffered by her testimony being un-sworn. This is frivolous and totally without merit.
Mrs. Robert complains that the trial court abused its discretion by failing to grant a mistrial[8] and by failing to take appropriate responsibility for enforcement of its orders. The record does not bear this out.
|sMrs. Robert complains that she was not allowed to speak directly to the hearing officer at the hearing officer’s conference.[9] Her trial de novo in the district court cures this unsubstantiated and con *640 tested claim, as she testified at length in the trial de novo, without limitation, and had every opportunity to call witnesses and offer evidence.
Mrs. Robert takes issue in brief with previous custodial litigation and her representation in those proceedings. These matters have been previously dealt with by this court,[10] and we decline to revisit those issues.
Mrs. Robert also complains that the trial court wasted valuable time on the valuation of “foolish items,” including a used washer and dryer, as well as a discarded bush hog. On the contrary, we appreciate the trial court’s careful attention to detail in these proceedings. It is curious that appellant would make this complaint, as the net adjustments inured substantially to her benefit in the apportionment and evaluation of this modest community.[11]
Mrs. Robert attacks the hearing officer’s apportionment of the reimbursement due her on payments made on a separate, pre-marriage loan obligation of Mr. Robert. The total payments made were $8,267.70, and the hearing officer set the reimbursement owed to Mrs. Robert at $4,138.88. 14She contends that the full amount of $8,267.70 is due to her, not just the one-half assigned by the hearing officer and confirmed by the district court.
La. C.C. art. 2364 entitles a spouse to one-half of the value of any community property used to satisfy a separate obligation of the other spouse. Mr. Robert made a $25,000 loan prior to the marriage, and during the marriage the couple borrowed $23,035 from Iberia Bank, some of which proceeds were paid on the earlier loan. Neither litigant introduced documentation clearly reflecting the amount of the Iberia loan that was paid on the older loan. Although appellant did not meet her burden of proof of establishing the exact amount of community funds used to defray Mr. Robert’s preexisting separate debt, the district court nonetheless generously awarded her half the amount. Mr. Robert did not appeal. From the record before us, we cannot find fault with this award, which is not clearly wrong.
Mrs. Robert objects to the Iberia Bank loan of $23,035 being categorized as a community debt.[12] However, she did not dispute this finding while at the conference before the hearing officer. This complaint was not listed in her Objection to the Hearing Officer’s report. She also challenges the valuation assigned to the Mitsubishi Mirage, which was based upon Kelley Blue Book valuations. We cannot discern from this record that either finding is manifestly erroneous.
According to appellant, Mr. Robert was improperly granted reimbursement for interest on loans against a New York Life Insurance ^Policy on his life. While admitting that the policy was in existence prior to the marriage, Mr. Robert points out that the undisputed evidence shows that the loans taken against the policy were incurred during the parties’ marriage. The first loan was made April 26, 2002, during the marriage. No payments have been made and the accrued interest is $8,498.28, which is an appropriate community debt, properly assigned to Mr. Robert.
*641 Mrs. Robert assigns as error the trial court’s allowing into evidence certain documentary support relative to Mr. Robert’s $3,500 loan from his brother Eldred. No objection was made to these offerings at trial, and allowing the documentary evidence was within the trial court’s discretion.
Mrs. Robert contests the allocation of a 2002 Ford F-150 Supercab truck as community property. During the marriage, she won a smaller truck at a casino drawing, and the married couple took an equivalent amount of proceeds and applied it on this better, more expensive, truck. We find no rational basis by which to challenge either the categorization or the valuation of the truck, which was taken from the Kelley Blue Book.
Mrs. Robert accuses the trial court of being unprofessional and demeaning to her, because she had no lawyer. The record reflects just the opposite—it reveals a trial judge with unlimited patience and kindness toward Mrs. Robert. The court carefully explained to her that he would hear all she had to say but would not consider assertions that had no legal basis. The court took great pains to explain what was transpiring in the always difficult situation when only one party has counsel. The record supports that the trial court did all within its power to reach a just decision, utilizing |6tact and compassion, while applying the law to these convoluted facts. The court avoided “legalese” and ensured that Mrs. Robert not be at a disadvantage because of appearing pro se. She was allowed to testify at great length. Mrs. Robert called no witnesses and offered no exhibits.
Mrs. Robert wanted a value of $2,400 placed on a 10-year-old 18-foot trailer built by Mr. Robert. The original materials cost $1,500 and that was the value used by the trial court. We do not find this an abuse of discretion.
After the community property regime ended, Mr. Robert received a cash settlement from the VA for injuries suffered during his service in Vietnam. Mrs. Robert alleges that she worked hard to help Mr. Robert finally receive this benefit and was promised some of it by Mr. Robert.
Mr. Robert denies making this promise, and he is entirely correct in citing state and federal law in support of his contention that she is not entitled to any portion of this benefit. See 10 U.S.C. § 1408(d)(2). In some circumstances, federal law permits direct payments to a former spouse who presents a state-court order granting the former spouse a portion of the military retiree’s disposable retirement or retainer pay. To qualify an ex-spouse must have been married to the retired military member for a period of 10 years or more during which the member performed at least 10 years of creditable service. As to Mr. Robert’s disability payments, none of his military service occurred during this marriage. See Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).
SUMMARY
A careful assessment of this record reveals:
17* a scholarly and detailed seven-page recommendation of a highly professional hearing officer;
• a transcript allowing unlimited testimony by Mrs. Robert, with avuncular assistance from a kind and able district court judge;
• a brief oral ruling of the trial court reflecting very few changes in valuations, as revealed by the testimony and other offerings;
*642 • absolutely nothing to indicate that this judgment should be changed in any manner; and
• proof positive that Mrs. Robert has had her day(s) in court, having been treated fairly and with respect.
DECREE
With all costs of this appeal being taxed against appellant, Judy Thompson Robert, the ruling of the trial court is AFFIRMED.

. The trial court made de minimis value adjustments in five items of personal property in dispute. Cumulatively, the changes benefited appellant, as her ex-husband’s equalizing payment to her was increased from $8,534 to $9,447.

. Robert v. Robert, 44,528 (La.App.2d Cir.8/19/09), 17 So.3d 1050, writ denied, 2009-2036 (La. 10/7/09), 19 So.3d 1.

. At all pertinent times before January 31, 2011, appellant was represented by counsel.

. Mrs. Robert suggested at the trial de novo that the amount of $30 would be reasonable for the value of the bush hog.

. An old tube television.

. Mrs. Robert initially suggested $10 for the lawnmower at trial, but then both sides later agreed that a five dollar value was acceptable.

. The deep freeze was inoperable and Mrs. Robert expressed her intention to utilize it as a worm bed. In addition, the hearing officer had categorized a washer and dryer as community property. Upon Mrs. Robert’s concession that the two machines had been purchased by Mr. Robert before the marriage, the trial court declared the two items to be the separate property of Mr. Robert.

. Our close review of appellant's brief leads us to infer that these complaints relate to her problems with the conduct of the hearing officer's conference, as we find no formal motion for mistrial in the district court proceeding.

. For years before the hearing officer's conference, and for months afterwards, appellant was represented by able counsel. Much of Mrs. Robert’s brief is spent criticizing her former lawyer’s conduct at the conference, particular as regards her not being able to speak directly with the hearing officer.

. See Robert v. Robert, supra, in fn. 2.

. The parties married relatively late in life, and had little opportunity to accumulate property in the slightly over seven years of their unhappy marriage.

.“An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation.” La. C.C. art. 2361.